IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Deborah Clark, | ) | C/A No. 3:15-2864-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| School District Five of Lexington and | ) | |
| Richland Counties, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Deborah Clark, filed this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., also raising state law claims against her former employer, School District Five of Lexington and Richland Counties ("the School District"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 29.) Clark filed a response in opposition (ECF No. 37), and the School District filed a reply (ECF No. 38.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to the plaintiff, to the extent they find support in the record. Clark worked as a school teacher for forty-two years, including employment by the School District as a special needs teacher from 2008 until her retirement following the 2014-2015 academic year. She suffers from symptoms of post-traumatic stress disorder, panic attacks, and agoraphobia stemming from her experience in 1989 when she was

trapped with her family during Hurricane Hugo, which destroyed her home. In 2013 she began treatment with Dr. Darlene Moak, a psychiatrist, for these symptoms.

In 2011 Clark adopted a Chihuahua named "Pearl." According to Clark, before the upcoming school year, Clark met with the new school principal, Don Hardie, about a pet therapy program she and a colleague had been using at the alternative school where she then taught, and obtained permission to bring Pearl to school both in conjunction with that program and as a "therapy dog" in training for Clark. During the academic years from 2011-2013, Pearl accompanied Clark to school and performed as a service and therapy dog for both Clark and her students without incident or complaint from any student, parent, colleague, or administrator.

In the spring of 2013, Hardie informed Clark that when the alternative school at which Clark taught relocated to the new Spring Hill High School campus for the next school year, the District would no longer permit animals in the classroom. Clark objected and provided a letter from Dr. Moak stating that "forcing Ms. Clark to teach without the assistance of her service dog will be profoundly detrimental to her well being." (Letter dated June 14, 2013, Moak Aff., Attach. C, ECF No. 37-19 at 9.) Dr. Angela Bain, the District's Chief Human Resources Officer, denied Clark's request to have Pearl at school with her. (Letter dated July 18, 2013, ECF No. 37-5.)

Clark taught without Pearl through the 2013-2015 school years, suffering several panic attacks at school. The District relieved her from supervisory responsibilities in large settings and permitted her to stand outside the room during District-wide events; however, Clark's appeal through the grievance procedures to have Pearl accompany her to school was unsuccessful. Clark retired at the end of the school year in the spring of 2015, seven years earlier than she had previously planned.



## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*."  Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there



will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Applicable Burden Shifting Framework**

Claims alleging an employer failed to provide an employee a "reasonable accommodation" in violation of the ADA are evaluated pursuant to a two-step burden-shifting framework. See United States v. Barnett, 535 U.S. 391, 401 (2002). First, the plaintiff/employee bears the burden of proof that the requested accommodation is reasonable. "Once the plaintiff has made this showing, the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id. at 402.

**C.    Clark's ADA Claim**

"In a failure to accommodate case, a plaintiff establishes a prima facie case by showing '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.' " Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (alterations in original) (quoting Mitchell v. Washingtonville Ctr. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)); see also Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).

In its motion, the School District challenges Clark's ability to establish the third and fourth elements. It first argues that Clark is able to perform the essential functions of her job without the



presence of her dog, and, therefore, Pearl cannot constitute a reasonable accommodation for Clark's disability.[1]  The court agrees.

The regulations promulgated under the ADA define "reasonable accommodation" as one that *enables* a qualified individual with a disability to perform the essential functions of her job.  29 C.F.R. § 1630.2(o)(1)(ii).  Here, although expressing a preference for having Pearl accompany her, Clark has repeatedly affirmed that she is able to do her job without her dog.  (See, e.g., Clark Letter dated February 21, 2014, ECF No. 29-4 at 11 ("I am able to perform my duties" but identifying certain situations that place her in jeopardy, such as en masse release of students during fire drills; attending meetings at other schools at student dismissal time; and attending district meetings and other occasions when large crowds are expected); Clark Dep. 147:23-25, ECF No. 29-2 at 147 (confirming that she had done a great job and was a good teacher)).  Similarly, her physician, Dr. Moak, repeatedly opined that Pearl's presence calmed Clark in *crowded* situations, expressing no limitations as to her teaching functions in the classroom.  (Letters from Moak dated August 6, 2013, January 17, 2014, & June 14, 2013, ECF Nos. 37-19 at 4-9.)

Courts have recognized that in such circumstances, the requested accommodation is not a reasonable one because it does not enable the employee to do the essential functions of her job.  In Schultz v. Alticor/Amway Corp., 177 F. Supp. 2d 674 (W.D. Mich. 2001), aff'd, 43 F. App'x 797 (6th Cir. 2002), the court held that an employer was not required to permit a hearing-impaired employee to bring a service dog to work because the employee acknowledged that the essential functions of his job as a designer did not require the assistance of his dog.  Id. at 678.  Similarly, in

---

[1] Because Clark's claim arises under Title I of the ADA, the issue of whether Pearl falls within the definition of "service animal" applicable under Titles II and III is not pertinent to resolution of the defendant's motion.



Anderson v. National Grid, PLC, 93 F. Supp. 3d 120 (E.D.N.Y. 2015), the court found that a plaintiff who acknowledged that he could perform all of the essential functions of his job as a senior field supervisor—a management level position responsible for supervising laborers, mechanics, and foreman in the defendant's gas field operations—in the Patchogue yard was not entitled to a transfer to the geographically closer Riverhead yard because his back condition was aggravated by the longer commute.

Here, Clark has not presented sufficient evidence from which a reasonable jury could find that any of the activities she claims to need Pearl's assistance with are essential to her job as a teacher. Rather, the fact that the School District accommodated her by relieving her of the responsibilities she found more difficult without Pearl is strong evidence that these duties were not essential to her job. Additionally, as attested to by her principal and affirmed by Clark herself, Clark successfully performed her teaching duties for two years without Pearl after the relocation to the Spring Hill campus. (Hardie Dep. 67:8-69:6, ECF No. 29-3 at 21-23; Clark Letter dated February 21, 2014, ECF No. 29-4 at 11.)

In determining whether a job responsibility is "essential," courts must consider various factors. First, the ADA specifies that it is "the employer's judgment as to what functions of a job are essential," and that a written job description prepared by the employer before advertising or interviewing applicants for a job "shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Applicable regulations define "essential functions" as those fundamental to the job; marginal functions of the position are not essential. 29 C.F.R. § 1630.2(n)(1). The regulations provide a non-exclusive list of factors that may be considered in determining that a function is essential: (1) the reason the position exists is to perform that function; (2) a limited



number of employees are available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent is hired for his or her expertise or ability to perform that function. See 29 C.F.R. § 1630.2(n)(2). The regulations go on to provide additional evidence to be considered as to whether a job function is essential: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants; (3) the amount of time spent performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents; and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3).

      Applying the factors applicable here, the court observes that the written job description for Alternative Education Teacher, which applies to Clark's position, focuses on classroom and instructional duties. (See Bain Aff., Attach. A, ECF No. 29-6 at 7.) Further, Dr. Angela Bain, then the School District's Chief Human Resources Officer, identified the essential functions of Clark's job as including the instruction, supervision, and management of students, largely within a classroom setting. (See, e.g., Bain Aff. ¶¶ 4, 5, ECF No. 29-6 at 1-2.) Although teachers occasionally were required to attend staff meetings and serve on committees, Bain testified that these duties were ancillary, not essential, to the position. (Id. ¶ 6, ECF No. 29-6 at 2.) Clark has presented no evidence disputing this.

      No other evidence in the record reasonably suggests that the duties that Clark identified that she needed Pearl for were essential functions. Indisputably, the reason Clark's position existed was to instruct students, not to monitor fire drills or attend crowded district meetings. The evidence further only permits the conclusion that plenty of other teachers were available for those duties, and



that those functions were not highly specialized. The amount of time devoted to those marginal duties was minimal, and the consequences of not requiring Clark to perform them were not significant, as shown by the School District's ability to accommodate Clark by removing those duties from her responsibilities. All of these factors demand the conclusion that the duties identified by Clark as requiring Pearl's presence were not essential functions.

Clark argues in response to the School District's motion that the ADA not only requires her employer to accommodate her with regard to the essential functions of her job, but also demands that it allow her "to perform in the least restrictive environment available within reason." (Pl.'s Mem. Opp'n Summ. J. at 14, ECF No. 37 at 14.) In support of this argument, Clark relies on several cases addressing the ADA's requirement that a reasonable accommodation allow an employee to attain an equal level of achievement, opportunity, and participation that a nondisabled individual in the same position would be able to achieve. Merrill v. McCarthy, 184 F. Supp. 3d 221, 236 (E.D.N.C. 2016); see also 29 C.F.R. § 1630.2(o)(1)(iii); Nawrot v. CPC Int'l, 259 F. Supp. 2d 716, 725-26 (N.D. Ill. 2003) (observing that the employer is required to grant accommodations that make it possible for a disabled employee to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities).

The court finds the cases relied upon by Clark to be distinguishable. Each of them indeed appears to support the proposition that, beyond allowing for an employee to perform the essential functions of her job, an accommodation must give a disabled employee the opportunity to enjoy the equal benefits and privileges of employment. 29 C.F.R. § 1630.2(o)(1)(iii); see Merrill, 184 F. Supp. 3d at 236; Nawrot, 259 F. Supp. 2d at 725-26. However, a review of the facts of each of these cases illustrates that what the courts there were requiring was accommodation to allow the employee to



function in the workplace—*i.e.*, to accommodate a disability that, although not necessarily impacting the employee's ability to perform discrete essential functions of the job, otherwise would prevent the employee from making it through a workday. For example, in <u>Nawrot</u>, the court found that an employee with diabetes who could perform the essential functions of the job without accommodation nonetheless stated a claim for failure to accommodate when the employer refused to allow him to take breaks to monitor and maintain his insulin levels. <u>Nawrot</u>, 259 F. Supp. 2d at 724-26. Similarly, in <u>Scalera v. Electrongraph Systems, Inc.</u>, 848 F. Supp. 2d 352, 366-68 (E.D.N.Y. 2012), the court allowed a failure-to-accommodate claim to proceed where the employer refused to provide an employee a higher toilet seat and handrail in the employee restroom.

Here, the evidence does not support a reasonable conclusion that Clark's condition rose to that level. The record is undisputed that she successfully performed the essential teaching functions of her job for two years without Pearl. Unlike the lack of insulin breaks for the plaintiff in <u>Nawrot</u> or the plaintiff's inability to utilize the restroom in <u>Scalera</u>, the absence of Pearl did not prevent Clark from making it through her workday or otherwise enjoying the benefits and privileges of employment available to nondisabled employees. In this case, Clark's psychiatrist opined that she would be less stressed and "cope better" with Pearl, and that Pearl would enable her to perform at her highest level. (Letters from Moak dated Aug. 6, 2013, Jan. 17, 2014, & June 14, 2013, ECF Nos. 37-19 at 4-9.) But being less stressed and able to perform at one's highest level is beyond the standard required by the ADA. Rather, "a reasonable accommodation should provide a meaningful equal employment opportunity. Meaningful equal employment opportunity means an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities." <u>Reyazuddin v. Montgomery Cty., Md.</u>, 789 F.3d 407, 416 (4th Cir. 2015) (quoting



H.R. Rep. No. 101-485, pt. 2, at 66 (1990)).  Here, Clark has not identified any benefit or privilege that a nondisabled employee had that she could not enjoy.  Cf. Merrill, 184 F. Supp. 3d at 238 ("The purpose of the requirement that an individual is able to perform the essential functions of her job (with or without accommodation) 'is to ensure that individuals with disabilities who can perform the essential functions of the position held . . . are not denied employment opportunities because they are not able to perform marginal functions of the position.' ") (quoting 29 C.F.R. pt. 1630, app. § 1630.2(m)).  To the extent Clark may be arguing that she could not enjoy a day without panic attacks without Pearl, there is insufficient evidence in the record from which a reasonable jury could find that she ever had one in the classroom setting or that the accommodations the defendant offered did not end the panic attacks.  But more to the point with regard to the regulatory language, she presents no evidence that she was denied any employment opportunity because she was not able to monitor fire drills, attend district meetings, or perform other marginal functions outside of teaching in the classroom.  Cf. E.E.O.C. v. Life Tech. Corp., Civil Action No. WMN-09-2569, 2010 WL 4449365, *7 (D. Md. Nov. 4, 2010) (finding summary judgment not appropriate where a genuine dispute of fact existed as to whether a hearing-impaired plaintiff was deprived of benefits or privileges of his employment where he could not participate in *mandatory* meetings in the same manner as other employees because the employer would not provide a sign language interpreter at those meetings).  Accordingly, the School District is entitled to summary judgment on Clark's ADA claim.

## RECOMMENDATION

For the above reasons, the court recommends that the defendant's motion for summary judgment (ECF No. 29) be granted with regard to Clark's ADA claim, and that the court decline to exercise supplemental jurisdiction over any state law claims.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 6, 2017
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).